E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Chief, Major Frauds Section
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2432/1259
     Facsimile: (213) 894-6269
     E-mail:    ranee.katzenstein@usdoj.gov
                alexander.schwab@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-324-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT FONTRELL ANTONIO BAINES |
| v. | |
| FONTRELL ANTONIO BAINES, aka "Nuke Bizzle," | Hearing Date: December 7, 2022<br>Hearing Time: 3:00 p.m.<br>Location:    Courtroom of the<br>             Hon. Michael W.<br>             Fitzgerald |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ranee A. Katzenstein and Alexander B. Schwab, hereby files its sentencing position for defendant Fontrell Antonio Baines.

This sentencing position is based on the attached memorandum of points and authorities, the Presentence Investigation Report ("PSR"),

the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 16, 2022            Respectfully submitted,

                                              E. MARTIN ESTRADA
                                              United States Attorney

                                              SCOTT M. GARRINGER
                                              Assistant United States Attorney
                                              Chief, Criminal Division

                                                    /s/
                                              RANEE A. KATZENSTEIN
                                              ALEXANDER B. SCHWAB
                                              Assistant United States Attorneys

                                              Attorneys for Plaintiff
                                              UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Fontrell Antonio Baines is no stranger to the federal criminal justice system.  In 2014, he was sentenced to 30 months' imprisonment for unlawful possession of a firearm by a previously convicted felon.  (PSR ¶ 123.)  In 2020, he was charged with defrauding the Pandemic Unemployment Assistance program and, upon his arrest, was again found unlawfully possessing a firearm.  (PSR ¶ 58.)  While those cases were pending in this district, defendant was charged in the Western District of Tennessee with drug trafficking in connection with his efforts to smuggle various opioids and controlled substances through the Memphis airport in a checked bag.  (PSR ¶¶ 26-32.).

Defendant's crime was serious, and his criminal history is extensive. For these reasons, the government requests that the Court impose a sentence of 77 months' imprisonment -- the low-end of the applicable guidelines range -- followed by three years of supervised release and a $100 special assessment.  As explained below, the government recommends that the Court impose this sentence to run concurrently to the sentences in case Nos. CR 20-522-MWF and 21-379-MWF.

**II.  STATEMENT OF FACTS**

Defendant admitted to the following facts in connection with his guilty plea to possession with intent to distribute a controlled substance:

> On January 31, 2020, defendant arrived at the upper drive of the Memphis International Airport in Memphis, Tennessee, in a gold car with dark tinted windows.  Video surveillance captured defendant getting out of the car and

pulling a bag.  Defendant checked the bag (hereinafter, the "checked bag") for a flight on Southwest Airlines.

As part of their routine screening, TSA screeners examined the checked bag.  They found several large plastic bags containing marijuana, two one-pint bottles of promethazine with codeine oral solution, and cash.  The checked bag had a Southwest Airlines tag bearing defendant's name.

Defendant was contacted by law enforcement.  Although he had in his possession a baggage claim ticket the SKU of which matched the SKU of the checked bag, defendant denied ownership of the checked bag.

Defendant was detained and transported to a Memphis International Police Department substation.  Officers searched his backpack and found one pint of promethazine with codeine oral solution; a plastic prescription cannabis bag with marijuana inside; two cigarette rollers; and a prescription bottle with the name "Dwight Smith" containing 45 Acetaminophen and oxycodone hydrochloride pills, 6 whole and 6 half alprazolam pills, and 1 whole and 2 partial pieces of Amphetamine and Dextromaphetamine.

The oral solution weighed a total of 45 ounces.  The marijuana in the various bags weighed in total 7 pounds, 6.2 ounces.  Defendant stated that he owned a medical marijuana shop in California and explained that the writing on each bag indicated the flavor of the marijuana in each bag.  Defendant again stated that the checked bag did not belong to him.

A further search of the checked bag was conducted and the following additional items were found:  5 plastic prescription cannabis bags with marijuana inside (approximately 1 ounce in each), and over 60 unused prescription cannabis bags.  Officers also searched defendant and found $7,000 in his pocket, $10,400 in the sole of his right shoe, $10,200 in the sole of his left shoe and $5,825 in his luggage.

(CR 2 (Plea Agreement) ¶ 11).

### III. RESPONSE TO THE PRESENTENCE REPORT

The government agrees with the findings of the PSR (CR 25) except that, as discussed below, the government partially disagrees with the multiple count analysis in paragraphs 104-106 and the related criminal history calculation.

2

**IV.  GOVERNMENT'S SENTENCING POSITION**

    **A.  Sentencing Guidelines**

Consistent with the plea agreement, the government submits that the following sentencing guidelines apply to defendant's drug crime:

| | | |
|---|---|---|
| Base Offense Level | 24 | USSG § 2D1.1(a), (c) |
| Acceptance of Responsibility | -3 | USSG § 3E1.1 |
| **Total Offense Level:** | **21** | |

The PSR finds that defendant has 11 criminal history points, placing him in Criminal History Category V. (PSR ¶ 125.)  This score does not include any points for defendant's fraud and gun offenses charged in case Nos. CR 20-522-MWF and CR 21-379-MWF.  If the Court sentences defendant in those cases before it imposes sentence in the instant case, defendant will have three additional criminal history points (see USSG § 4A1.1(a)), placing him in Criminal History Category VI and resulting in a sentencing guidelines range of **77-96 months' imprisonment.**  The government's recommended sentence of 77 months' imprisonment falls at the bottom of this range.[1]

The Probation Officer has calculated that defendant's total offense level is 27 because the Probation Officer has included as part of the sentencing in this case defendant's unrelated fraud and gun cases that are also pending before the Court.  The Probation Officer's multiple count analysis under USSG § 3D1.1 incorrectly combines all of the pending cases, and thus adds three levels to

---

[1] The government has assumed that the Court will sentence defendant in Nos. CR 20-522-MWF and 21-379-MWF before holding the sentencing hearing in this case.  If the reverse occurs, then defendant's criminal history will be Category V for the instant case (PSR ¶ 125, at 23), and the government will instead recommend 70 months' imprisonment, which would be the low end of defendant's guideline range if he remains in Category V for purposes of this sentencing proceeding.

3

defendant's total offense level instead of just one.  (PSR ¶¶ 104-107.)  This is incorrect.  The proceedings for defendant's fraud and gun offenses have been appropriately consolidated since the gun offense occurred during defendant's arrest on the fraud charges.  Defendant's drug offense is a completely separate matter that has not been consolidated with the other cases. The sentencing for the drug case is separate and the matters should not all be combined in the multiple count analysis.

The Sentencing Guidelines prescribe that, "[f]or purposes of sentencing multiple counts of conviction, counts can be . . . contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding."  USSG § 3D1.1, comment. (n.1).  It is true that the sentencing hearing in this case has been set on the same day as the sentencing hearing in the fraud and gun cases, but this is due solely to considerations of logistical convenience.  Defendant's drug case is before the Court after having been transferred from the Western District of Tennessee and concerns criminal conduct that occurred in Memphis in January 2020.  (PSR ¶¶ 26-33.)  The drug case is related to the fraud and gun cases only insofar as they all name the same defendant.  Defendant's sentencing hearings in the drug case, on the one hand, and in the consolidated fraud and gun cases on the other hand, may occur back-to-back, but it would be no more appropriate to consider those hearings as occurring "at the same time" or "in a consolidated proceeding" as it would if defendant's drug case had never been transferred and the district court in the Western District of Tennessee imposed sentence on the same day.

In any case, the government is recommending that the Court impose defendant's sentence in this case to run concurrently with the sentences imposed in the consolidated fraud and gun cases. Thus, the government submits that its position regarding the application of the multiple count adjustment is not only correct but will also likely inure to defendant's benefit.

**B. Analysis of the § 3553(a) Factors**

    1. <u>Nature and Circumstances of the Offense and History and Characteristics of Defendant</u>

After previously sustaining a similar drug-trafficking felony conviction in 2011 (PSR ¶ 116), defendant attempted to traffic a slew of controlled substances, mostly opioids, through an airport. Defendant committed this offense in the midst of an opioid epidemic that cost 68,630 American lives in 2020,[2] the year he was caught in Memphis attempting to stash drugs in his checked luggage. And, when defendant was caught, he chose to lie to law enforcement, falsely claiming that he "owned a medical marijuana shop in California" and that "the checked bag did not belong to him." (PSR ¶ 30.)

The sentencing guidelines for defendant's crime, which call for a sentence of **77 to 96 months' imprisonment**, appropriately account for the severity of defendant's offense, both insofar as his elevated criminal history score reflects the seriousness of his recidivism and his offense level captures the damage done to the public through the dissemination of illegal drugs by individuals like defendant.

---

[2] <u>See</u> National Institutes of Health, "Overdose Death Rates" (Jan. 20, 2022), <u>available at</u> https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates#:~:text=Opioid%2Dinvolved%20overdose%20deaths%20rose,(Source%3A%20CDC%20WONDER).

        2.   <u>Defendant's Lengthy Criminal History Supports Imposition of a 77-Month Sentence to Provide Specific Deterrence and Protect the Public</u>

Defendant's criminal history goes back to his early adulthood. His entire adult employment record comprises a brief stint in 2016 detailing cars while living in a halfway house (PSR ¶ 162), yet in the same timeframe, defendant has managed to amass criminal convictions in twelve cases including defendant's three criminal cases currently pending before the Court. (PSR ¶¶ 116-124.) In particular, defendant has prior felony convictions for unlawful possession with intent to sell dihydrocodeine and unlawful possession of a firearm by a previously convicted felon -- offenses nearly identical to two of the three federal charges for which defendant now faces sentencing. Given that defendant's prior prison sentences have failed to deter him from recidivism, the sentence in this case must be comparatively longer, both to offer that deterrence and to protect the public from a defendant who has demonstrated little interest in self-reform.

**C.  A Low-End, Concurrent Sentence Is Appropriate**

The sentence in this case must account for the seriousness of defendant's drug-trafficking crime, his recidivism, and his consistent lawlessness. Nevertheless, the government submits that a sentence higher than the low end of his guideline range is not necessary for the following reasons.

First, while defendant's criminal history is lengthy, his prior felony sentences were far shorter than what his guideline range contemplates in this case: two years for his prior drug trafficking crime and 30 months for his previous § 922(g) conviction. (PSR ¶¶ 116, 123, at 19, 22). Since these prior sentences have proved to

1 be inadequate to deter him, defendant's sentence in this case must be
2 comparatively longer.  But the Sentencing Guidelines already account
3 for this need in terms of defendant's criminal history category,
4 which increases his sentencing range.
5 　　　　Second, defendant's horrific childhood circumstances undoubtedly
6 set him on the wrong path in life.  (PSR ¶¶ 138-147.)  Although
7 defendant's personal history is not an appropriate basis for a
8 downward departure, see USSG § 5H1.12 ("Lack of guidance as a youth
9 and similar circumstances indicating a disadvantaged upbringing are
10 not relevant grounds in determining whether a departure is
11 warranted."), and defendant remains responsible for his own choices
12 to engage in criminal conduct, the government recognizes that his
13 ability to make good decisions may have been adversely affected by
14 his apparent lack of meaningful parenting.  The recommended 77-month
15 sentence is sufficient to achieve just punishment and specific and
16 general deterrence while also affording defendant the opportunity to
17 seek necessary programing and education to set him up for success
18 upon his release.  (E.g., PSR ¶ 160, at 31 (describing defendant's
19 desire to obtain his GED while incarcerated)).
20 　　　　Third, the government is recommending that defendant be
21 sentenced to 96 months' imprisonment in the fraud and gun cases.
22 Given the length of that sentence, defendant need not be sentenced to
23 a consecutive term of imprisonment to accomplish the goals of 18
24 U.S.C. § 3553(a) and certainly need not be sentenced above the low
25 end of his guideline range, which is already substantial.
26 **V.    CONCLUSION**
27 　　　　For the foregoing reasons, and assuming defendant falls in
28 Criminal History Category VI, the government respectfully requests

7

that this Court impose 77 months' imprisonment followed by three years of supervised release and a $100 special assessment, and that this sentence be imposed to run concurrently with the sentences in Nos. CR 20-522-MWF and 21-379-MWF.